Jeana R. Lervick (MT Bar No. 13197)
CROWLEY FLECK PLLP
500 Transwestern Plaza II
490 North 31st Street
P. O. Box 2529
Billings, MT 59103-2529
Telephone:  (406) 252-3441
Facsimile:   (406) 256-0277
Email:  jlervick@crowleyfleck.com

*Attorneys for Plaintiff*
     *Great Harvest Franchising, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | | |
|---|---|---|
| GREAT HARVEST FRANCHISING, INC., | ) ) ) | Cause No. CV-24-32-BU-BMM |
| Plaintiff, | ) ) | |
| v. | ) ) | **VERIFIED COMPLAINT** |
| GREGORY ANDREW WILLIAMS GREEN, and KIMBERLY ELAINE GREEN, | ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW, Great Harvest Franchising, Inc. ("Great Harvest"), by and through undersigned counsel, and hereby files the following Complaint against Gregory Andrew Williams Green ("Mr. Green") and Kimberly Elaine Green ("Mrs. Green") (collectively "the Greens") in relation to the Greens' violation of the

Great Harvest Franchise Agreement ("Franchise Agreement") upon the Greens' decision not to renew the Franchise Agreement and to end the franchise relationship. In support of its Complaint, Great Harvest alleges and states the following:

**JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in relation to Great Harvest's federal law claims pursuant to 15 U.S.C. §§ 1114 and 1125(a).

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Jurisdiction in this case is based on diversity of citizenship.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.    This Court has supplemental jurisdiction over Great Harvest's state law claims arising under Montana statutory and common law pursuant to 28 U.S.C. § 1338(b) because those claims are joined with substantial and related claims under federal law.  The Court also has subject matter jurisdiction over Great Harvest's state law claims under Montana statutory and common law pursuant to 28 U.S.C. § 1367 because Great Harvest's state law claims are interrelated with its federal claims and arise from a common nucleus of operative facts such that the adjudication of Great Harvest's state law claims with Great Harvest's federal claims furthers the interests of judicial economy.

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5.      The parties have agreed that this Court shall have personal jurisdiction over the parties, that this is the exclusive venue in which to bring the immediate action, and any objections concerning jurisdiction and venue are waived.

## THE PARTIES

6.      Great Harvest is a corporation organized and existing under the laws of the state of Montana, with its principal place of business at 28 South Montana Street, Dillon, Montana, 59725-2434.

7.      Mr. Green is a resident of Winterville, Pitt County, North Carolina.

8.      Mrs. Green is a resident of Winterville, Pitt County, North Carolina.

9.      For a decade, the Greens operated a Great Harvest's franchise at 2803 Evans Street, Suite 100, Greenville, NC 27834.

## FACTS

10.     Great Harvest grew from a Montana bakery into the nation's first family of independently owned and operated whole grain bread bakeries.

11.     Today there are approximately one hundred and seventy (170) Great Harvest bakery franchises located across the United States.

12.     Since 1976, Great Harvest has been engaged in the development, marketing, advertising, distribution, and sale of various products, and licensed franchise services since 1978.

13.    Great Harvest's franchise services include retail bakery shops, baked goods, restaurants, bakery goods, and related goods and services.

14.    Great Harvest operates a niche business relying upon trade secrets, proprietary, and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, and pricing information branded as the Great Harvest System at the Bread Company ("Great Harvest System").

15.    Great Harvest takes reasonable and prudent steps to protect the Great Harvest System, including requiring its franchisees to execute a franchise agreement, and all employees and contractors of Great Harvest's franchisees to sign Confidentiality & Non-compete Agreements.

16.    Great Harvest is the registered owner of several trademarks which cover bakery café operations and products, including the following (collectively hereinafter the "Registered Marks"):

| MARK | REGISTRATION | DATE ISSUED |
|------|--------------|-------------|
|  | 6,735,082 | 05/24/2022 |

| | | |
|---|---|---|
| GREAT HARVEST BAKERY · CAFE | 6,735,081 | 05/24/2022 |
| "Great Harvest Co.®" | 1,861,078 | 11/01/1994 |
| "Great Harvest Co.®" with windmill design | 2,170,901 | 07/07/1998 |
| "Great Harvest Co.®" and Field and Windmill | 1,920,003 | 09/19/1995 |
| | 2,176,254 | 07/28/1998 |
| "Great Harvest Co.®" | 2,170,921 | 07/07/1998 |
| "Great Harvest Co.®" (for | 2,506,449 | 11/13/2001 |
| "Great Harvest Co.®" with | 2,318,706 | 02/15/2000 |
| Windmill Design (for | 2,500,676 | 11/20/2001 |

## I.    Franchise Relationship Between Great Harvest and the Greens.

17.    On April 29, 2014, the Greens entered into the Franchise Agreement with Great Harvest.  *See Exhibit A.*

18.    Pursuant to the Franchise Agreement, Great Harvest's obligations included without limitation:

a. Complete openness and candor with the Greens in regards to all business and personal relations involving the Greens and Great Harvest, subject to specific express limitations.

b. Providing the Greens with advice and counsel.

c. Providing the Greens with a list of approved suppliers of wheat and defined quality standards wheat suppliers must meet.

d. Providing the Greens with access to the Great Harvest System.

e. Granting the Greens exclusive territorial rights for their franchise.

19.    Throughout the term of the Franchise Agreement, Great Harvest fulfilled all of its obligations, and in all respects honored its commitments to the Greens.

20.    Upon information and belief, the Greens wanted to join Great Harvest as franchisees in order to take advantage of the unique business opportunities available to Great Harvest franchisees.

21.    The opportunities the Greens enjoyed as Great Harvest franchisees during the franchise relationship included having access to the Great Harvest System, which provided the Greens with access to:

all trademarks, signs, symbols, copyright materials and associated trade slogans and any proprietary aspect of the operation of Great Harvest Franchising, Inc. or a Great Harvest company, including: all recipes and

their related measurements; all bread making processes, techniques, skills, temperatures, an timing; all baking forms and systems; all details of Great Harvest making theory or practice, oven systems, ingredient standards, wheat standards, ingredient supplier lists, wheat suppliers, equipment standards, special use of equipment not commonly known outside Great Harvest, and equipment supplier list; all details of Great Harvest's unique Bread Company management theories and practices, training methods, and Bread Company promotion training methods; all Bread Company management forms and systems and build-out specifications; all details of Great Harvest's location hunting theory or practice, location search information, and tracking information and systems; all details of Great Harvest's unique franchising theories and practices; all secrets for achieving high Gross Sales in new Bread Companies; all proprietary aspects of our sandwich and coffee programs; all proprietary newsletters, audio/visual training tools, Breadboard contents, the Confidential Start-up Kit, and First Year Guidelines; the candidate list, all candidate information, and all proprietary internal personnel practices; and any other information or materials arising from Great Harvest related to the art of bread making, the operation of a Great Harvest company, the internal operation of

Great Harvest Franchising, Inc., or the training and franchising of the

Great Harvest System to Great Harvest company owners.

22.    Great Harvest also made available to the Greens as franchisees access

to Great Harvest's negotiated preferred pricing programs at food distributors Sysco

and Dawn Foods.

23.    This preferred pricing program with Sysco and Dawn Foods was

available only to Great Harvest franchisees for the exclusive use at Great Harvest

franchises.

24.    In exchange for having access to these opportunities, Great Harvest was

transparent with the Greens regarding the Greens' obligations as franchisees during

the franchise relationship.

25.    The Greens' obligations to Great Harvest as franchisees during the

franchise relationship included, but were not limited to:

   a. Complete openness regarding discoveries, new ideas, and

      innovations, including the promise that "every procedure, recipe, or

      idea developed or discovered by you will be available to all Signed

      Great Harvest Insiders and becomes the property of Great Harvest

      Franchising, Inc. for the benefit of all Great Harvest Insiders."

b.  Payment of a monthly fee of seven percent (7%) of gross sales, royalty payments, and other related fees and payments.

c.  Submitting to an audit, or examination of the franchise's records, as defined in Section C9 of the Franchise Agreement, by Green Harvest Bread during business hours and upon forty-eight (48) hours prior notice.

d.  Maintaining and retaining at franchisee's expense at the franchise location for a minimum of four years from the date of their preparation, full, complete and accurate books, records, and documents related to the operation of the franchise.

e.  Agreeing to fund the franchisee's gift card liabilities if the franchise agreed to participate in the program.

f.  Agreeing to maintain adequate insurance coverage in an amount not less than $1,000,000.00.

g.  Agreeing to purchase 100% of the wheat used in the franchise from Great Harvest approved suppliers.

h.  Acknowledging that Great Harvest at all times owns its trademarks as part of the Great Harvest System, and agreeing to no unauthorized use or infringement on Great Harvest's trademarks, along with

agreeing to follow Great Harvest's Web Standards related to using or displaying Great Harvest's trademarks.

i. Agreeing to promote the franchise by utilizing Great Harvest marketing materials and linking to Great Harvest's website from the website maintained by the franchise.

j. Agreeing to maintain strict confidentiality related to the Great Harvest System, and requiring all employees to execute a Confidentiality & Non-compete Agreement.

k. Agreeing to not compete directly with Great Harvest during the franchise relationship.

l. Agreeing to limit off-premises product sales.

26. In reliance on the Greens' promise to honor their contractual obligations pursuant to the Franchise Agreement, Great Harvest expended considerable time and resources training the Greens and providing them with trade secrets, confidential and proprietary business and financial information, customers, business opportunities, pricing policies, marketing and sales techniques, and other opportunities available through the Greens' access to the Great Harvest System.

27. Up until two days before the expiration of the Franchise Agreement, Great Harvest and the Greens enjoyed a fruitful and compliant franchise relationship.

Complaint - 10

II.    **Expiration of the Franchise Relationship.**

28.    Renewal of the Franchise Agreement by the Greens was due on May 8, 2024.

29.    Great Harvest notified the Greens of their option to renew the Franchise Agreement and provided them with an Amendment for Renewal for consideration and execution.

30.    On May 6, 2024, two (2) days before the deadline to renew the Franchise Agreement ran, the Greens informed Great Harvest that they did not intend to renew the Franchise Agreement.

31.    Great Harvest was transparent with the Greens from the beginning of the franchise relationship regarding the Greens' obligations as franchisees following the expiration of the franchise relationship.

32.    Pursuant to the Franchise Agreement, the Greens obligations continued post-expiration, and they agreed to adhere to and abide by those obligations as stated in the Franchise Agreement.

33.    The Greens' post-expiration obligations included without limitation:

a.  Maintaining strict confidentiality related to the Great Harvest System.

b.  Agreeing to pay Great Harvest all money owned to Great Harvest through the termination or expiration date.

c.  Returning of all of Great Harvest's confidential and proprietary information and documents, including confidential and proprietary information the Greens received as a result of having access to the Great Harvest System.

d.  Removal of all of Great Harvest's trademarks, logos, and other copyrighted material from the franchise location and franchise-maintained websites.

e.  Submitting to Great Harvest for its prior approval all new signs, marks and advertising materials.

f.  Agreeing to be liable for the unredeemed cards and certificates belonging to the franchise.

g.  Agreeing to transfer ownership of all domain names that include Great Harvest's name and trademarks.

h.  Notifying Great Harvest of the Greens' post-expiration business plans.

i.  Providing Great Harvest with a detailed written de-identification plan for the Greens' franchise.

j.   Agreeing to stop representing the business as a Great Harvest franchise or suggesting that the Greens are operating a store still using Great Harvest's trade secrets.    And,

k.   Agreeing to having the Greens' business be subject to inspection by Great Harvest for two years following the expiration of the Franchise Agreement so that Green Harvest Bread can confirm the Greens' compliance with the Franchise Agreement's post-expiration obligations pursuant to the Franchise Agreement.

34.    After declaring their decision not to renew the Franchise Agreement, but while still operating under and subject to the Franchise Agreement, the Greens changed the name of their business to Bake My Day Café and began to operate it on the internet.

35.    Instead of working toward satisfying their post-expiration obligations, and while still operating under and subject to the Franchise Agreement, the Greens began work to re-open their former Great Harvest franchise as the Bake My Day Café using the Registered Marks and other proprietary information belonging to Great Harvest.

36.    On May 8, 2024, Great Harvest sent the Greens a notice letter reminding the Greens of their obligations, outlining the required de-identification

plan, and demanding immediate compliance with contractual obligations. ("May 8, 2024 Letter" attached hereto and fully incorporated herein as *Exhibit B*).

37. Specifically, Great Harvest demanded that the Greens:

a. Submit to an audit of their Records as defined and required by the Franchise Agreement no later than June 22, 2024.

b. Provide Great Harvest with a detailed, written de-identification plan, as required by Section C26 of the Franchise Agreement;

c. Pay all money owed to Great Harvest through May 8, 2024, as required by Section C26 of the Franchise Agreement;

d. Return all of Great Harvest's confidential and proprietary information and documents, including the computer the Greens had previously received from Great Harvest, no later than May 13, 2024, as required by Section C26 of the Franchise Agreement;

e. Provide Great Harvest with a complete list of all inventory in the Greens' possession that bears Great Harvest's trademark or that was prepared according to Great Harvest's trade secret specifications, as required by Section C26 of the Franchise Agreement;

f. Remove immediately upon the expiration of the Franchise Agreement all signs, advertisements, web sites, blogs or other online materials displaying Great Harvest's logo or name, or which are

identifiable with Great Harvest's name or image, as required by Section C26 of the Franchise Agreement;

g.  Submit to Great Harvest all new signs, marks, and advertising materials for Great Harvest's approval, as required by Section C26 of the Franchise Agreement;

h.  Immediately upon expiration of the Franchise Agreement, cease and desist all use of any domain which contains or uses the Great Harvest trademarks, as required by Section C26 of the Franchise Agreement;

i.  Reimburse Great Harvest for all unredeemed cards and certificates belonging to the franchise, as required by Section C26 of the Franchise Agreement;

j.  Provide required information pertaining to the Greens' new business, including business name, trade name, location, menus, recipes, copies of all logos and signage, complete employee list, and state whether it will be selling bread products, as required by Section C26 of the Franchise Agreement;

k.  Comply with Section C6 of the Franchise Agreement, and not use any procedure or idea that the Greens may have discovered or developed while they were Great Harvest franchisees;

l.   The Greens provide a full accounting of all items purchased from Sysco and Dawn Foods over the prior fourteen (14) days as a result of their ability to participate in Great Harvest's preferred pricing programs with those companies through the Greens' access to the Great Harvest System;

m.   The Greens not represent themselves or suggest in anyway that they are operating their new business in a same or similar fashion to your prior utilization of the Great Harvest System;

n.   The Greens provide a list of all persons they employed over the last five years, along with copies of those employees' signed Confidentiality & Non-compete Agreements;

o.   The Greens submit to an audit of the franchise's records as permitted by Section C8 of the Franchise Agreement;

p.   The Greens permit Great Harvest to conduct an on-site inspection of their new business, pursuant to Section C17 of the   to verify compliance with all of their obligations pursuant to the Franchise Agreement.  The inspection is noticed for May 30, 2024 at 9 a.m.; and

q. Provide a verification signed by the Greens that confirms that their new business does not do any of the activities described as a competing business as stated in Section C17 of the Franchise Agreement.

38. To date, the Greens have failed to comply with the following post-expiration obligations contained in the Franchise Agreement , including the fact that:

a. They refused to participate in or allow for the mandatory audit;

b. They have not provided Great Harvest with a complete, detailed and written de-identification plan;

c. They have not returned all of Great Harvest's confidential and proprietary information and documents;

d. They have not stopped using online materials displaying Great Harvest's logo or name, or which are identifiable with Great Harvest's name or image;

e. They have not stopped using any domain which contains or uses the Great Harvest trademarks;

f. They have not submitted copies of all the recipes they plan to use at the new business;

g. They have not submitted a complete employee list of their new business;

h.  They have not provided a full accounting of all items purchased from Sysco and Dawn Foods over the prior fourteen (14) days as a result of their ability to participate in Great Harvest's preferred pricing programs with those companies;

i.  They have not confirmed that they will not use any procedure or idea that the Greens may have discovered or developed while they were Great Harvest franchisees;

j.  Have not verified that will maintain the secrecy of the Great Harvest System and not use any recipes that were previously used in the operation of their franchise;

k.  They have not provided a list of all persons they employed over the last five years, along with copies of those employees' signed Confidentiality & Non-compete Agreements;

l.  They continue to represent that they are operating their new business in a same or similar fashion to their prior utilization of the Great Harvest System;

m. They have not submitted all new signs, marks and advertising materials; and

n.  They have not provided a signed verification confirming that their new business does not do any of the activities described as a competing business as stated in Section C17 of the Franchise Agreement.

39.    By letter date May 10, 2024, the Greens claimed that they would not represent themselves and their new business as Great Harvest, yet as of the filing of this action the Greens continue to advertise and promote the new business using the Registered Marks, and associating itself as selling Great Harvest products.

40.    The Greens' agreed that violations of Sections C16 and C17 of the Franchise Agreement allows Great Harvest to recover liquidated damages, in addition to other remedies which might be available, in an amount equal to the maximum continuing fee based on their competing business' total Gross Sales during all periods of noncompliance.

41.    Following receipt of the Greens notice of non-renewal, it was discovered that the Greens were improperly utilizing Great Harvest's Registered Marks, copyrighted materials, proprietary information, and trade secrets that they obtained as a result of having access to the Great Harvest System to promote their new business, Bake My Day Café.

42.    In violation of the Franchise Agreement, on May 8, 2024, prior to the expiration of the Franchise Agreement, the Greens uploaded a video to the internet

and on the Great Harvest branded Facebook page for the Greenville, North Carolina Great Harvest store in which Mr. Green made public statements that he and his wife would be operating a new business in a same or similar fashion to the Great Harvest System.

43.     Specifically, Mr. Green made statements posted to the internet:

    a.  The business was just changing its name and going independent;

    b.  The business would continue to be Greenville's gathering place "just with a new name on the wall;"

    c.  The business would be same as it had always been – the same great products with a different name;

    d.  The food will continue to be hearty made from scratch; and

    e.  They will still be providing the same "cinnamon rolls" and "cheddar biscuits."

44.     Mr. Greens' statements in the video showed the Greens' intent to sell Great Harvest products and the utilization of Great Harvest's recipes that the Greens obtained only through their access to the Great Harvest System as franchisees.  Upon information and belief, the Greens intend to sell products using the same recipes as they used and/or learned from Great Harvest; and, they have refused to provide the recipes for the items listed on the menu for their new store.

45.    On May 8, 2024 and while subject to the Franchise Agreement, the Greens' renamed and rebranded the Great Harvest Facebook page for the Greenville North Carolina store to their new business, Bake My Day Café. The Greens continued to use and promote their new business using Great Harvest's trademarks and copyright material, images, and products.

46.    Because of Facebook's internal rules regarding changing the name of Facebook pages, even though Great Harvest now has control of the Facebook page, it cannot change the name of the Facebook page from Bake My Day Café back to Great Harvest for thirty (30) days.

47.    On May 8, 2024, and prior to the expiration of the Franchise Agreement, Great Harvest discovered that the Greens had launched a new web site for Bake My Day Café, https://www.bakemydaync.com  in violation of the Franchise Agreement. The Green's web site contains Great Harvest's Registered Marks, copyrighted material, and proprietary products made utilizing Great Harvest's trade secrets.

48.    The Bake My Day Café website has direct links to https://www.ezcater.com/catering/pvt/great-harvest-bread-co-greenville-evans-st which not only contains Great Harvest's trademarked name, but it also links directly to a webpage that displays Great Harvest's Registered Marks, copyrighted materials, and proprietary products made utilizing Great Harvest's trade secrets.

49.     Additionally, the Bake My Day Café website links to https://great-harvest-bread-co-28.square.site/ which contains Great Harvest's trademarked name and links directly to a webpage that displays Great Harvest's Registered Marks, copyrighted materials, and proprietary products made utilizing Great Harvest's trade secrets.

50.     Upon information and belief, the Greens designed their web pages and are marketing Bake My Day Café in this manner because they either intend to continue to sell Great Harvest products and use Great Harvest's recipes or desire for customers and potential customers to believe that they are affiliated with Great Harvests and are continuing to sell its products, or both.

51.     Despite receiving demands to cease and desist their violative conduct, the Greens refuse to comply.

52.     In addition to their online marketing and sales, the Greens intend to reopen the physical location for Make My Bread Café in the exact location as the former Great Harvest store at 6:30 am EST Tuesday, May 14, 2024.  As noted herein, the operation of this new business is in direct violation of the Franchise Agreement and the trademark rights of Great Harvest.

53.     On their web page, the Greens refer to the opening of Bake My Cafe Day as a "Grand Re-opening," (emphasis added), falsely implying that the new store is a continuation of the Great Harvest franchise.

54.    The Greens' multiple failures to comply with their pre- and post-expiration obligations as outlined in the Franchise Agreement constitutes a material breach of the Franchise Agreement.

55.    The parties agreed that Montana law governs all disputes regarding the parties' obligations pursuant to the Franchise Agreement.

56.    Because of the likely confusion as to the source of the goods and services in the minds of both Great Harvest's customers and potential customers, and the Greens' customers and potential customers at Bake My Day Café, along with the misappropriation of Great Harvest's Registered Marks, copyrights, trade secrets, and other materials provided to the Greens as a result of their access to the Great Harvest System, the Greens' conduct in failing to abide by their obligations pursuant to the Franchise Agreement has and will continue to damage Great Harvest.

## COUNT I

## Trademark Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114)

57.    Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 55 above as if fully set forth herein.

58.    This is an action for trademark infringement against the Greens based on their repeated unauthorized use of Great Harvest's Registered Marks in commerce following the expiration of the Franchise Agreement in connection with

the promotion, advertisement, distribution, sale and/or offering of goods and services that compete with those of Great Harvest or which are within a normal zone of expansion of such goods and services.

59.    Specifically, but necessarily by limitation, the Greens are promoting and otherwise advertising, selling, offering for sale and distributing products and services directly competitive with Great Harvest by using Great Harvest's Registered Marks on the Bake My Day Café's website and rebranded Facebook Page.

60.    The Greens are continuously infringing on Great Harvest's Registered Marks by using them to advertise, promote, sell, and offer to sell infringing goods and services at their new business, Bake My Day Café.

61.    The Greens' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, affiliation, sponsorship, and quality of the Greens' infringing goods and services at their new business, Bank My Day Café.

62.    The Greens' unlawful actions have individually caused and are continuing to cause unquantifiable damages and irreparable harm to Great Harvest and its franchisees and are unjustly enriching the Greens at Great Harvest's expense.

63.    The Green's above-described illegal actions constitute infringement of Great Harvest's Registered Marks in violation of Great Harvest's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

64.    Great Harvest has suffered and will continue to suffer irreparable injury due to the Greens' above-described activities if the Greens are not preliminary and permanently enjoined.

## COUNT II

## False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

65.    Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 63 above as if fully set forth herein.

66.    The Greens goods and services are the same or within a normal zone of expansion of Great Harvest's goods and services.

67.    Accordingly, the Greens' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of the Greens' goods and services as they related to Great Harvest.

68.    The Greens, upon information and belief, have directly used in connection with its advertisement, offer for sale, and sale of the infringing goods and services, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or

represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity and deceptiveness of such designations of origin and such descriptions and representations, all to Great Harvest's detriment.

69.    The Greens have authorized and induced infringing uses of Great Harvest's Registered Marks in the Green's advertisement and promotion of their infringing products and services.

70.    Additionally, the Greens are infringing Great Harvest's Registered Marks in order to unfairly compete with Great Harvest and others for space within search engine organic results, thereby jointly depriving Great Harvest and its franchisees of a valuable marketing and educational tool which would otherwise be available to them and reducing the visibility of Great Harvest's genuine goods and services on the World Wide Web.

71.    The Greens' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.    Great Harvest has no adequate remedy at law, and has sustained injury and damage caused by the Greens' conduct. Absent an entry of an injunction, preliminary and permanent thereafter, by this Court, Great Harvest will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III

## State Common Law Trademark Infringement

73.     Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 71 above as if fully set forth herein.

74.     The Greens have deliberately and willfully attempted to trade on Great Harvest's long standing and hard-earned goodwill in its Registered Marks and the reputation Great Harvest has established in connection with its scrumptious baked goods and food related services, as well as to confuse customers as to the origin and sponsorship of the Greens' goods and services and to pass them off as those of Great Harvest.

75.     The Greens' unauthorized and tortious conduct has also deprived and will continue to deprive Great Harvest of the ability to control customers' perception of its goods and services offered under Great Harvest's Registered Marks, placing the valuable reputation and goodwill of Great Harvest in the hands of the Greens.

76.     The Greens' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of the Greens with Great Harvest, and as to the origin, sponsorship, or approval of the Greens and their goods and services in violation of Montana common law.

77.    As a result of the Greens' aforesaid conduct, Great Harvest has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Great Harvest in its Registered Marks, goods and services.

78.    This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Great Harvest has no adequate remedy at law.

79.    Great Harvest has suffered and will continue to suffer irreparable injury due to the Greens' above-described activities if the Greens are not preliminary and permanently enjoined.

## COUNT IV

**Violation of Montana's Unfair Trade Practices and Consumer Protection Act**

**Pursuant to <u>Montana Code Annotated § 30-14-101, *et seq.*</u>**

80.    Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 78 above as if fully set forth herein.

81.    Violations of the Lanham Act constitute *per se* violations of Montana's Unfair Trade Practices and Consumer Protection Act, Montana Code Annotated § 30-14-1-1, *et seq*.

82.    The Greens have engaged in unfair competition by intentionally using Great Harvest's Registered Marks to trade on Great Harvest's long-standing and hard-earned goodwill in its Registered Marks, goods, and services, as well as in order

to confuse consumers as to the origin and sponsorship of Great Harvest's goods and services to pass the Greens' goods and services off as those of Great Harvest.

83.    The Greens' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Greens' new business, Bake My Day Café, and their goods and services with Great Harvest, and as to the origin, sponsorship, or approval the Greens and their goods and services.

84.    The Greens had direct and full knowledge of Great Harvest's prior use of and rights in Great Harvest's Registered Marks, goods, and services before the Greens engaged in the acts complained of herein.

85.    As a result of the Greens' aforesaid conduct, Great Harvest has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Great Harvest in its Registered Marks, goods, and services.

86.    This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Great Harvest has no adequate remedy at law.

87.    Great Harvest has suffered and will continue to suffer irreparable injury due to the Greens' above-described activities if the Greens are not preliminary and permanently enjoined.

## COUNT V

## Violation of Montana's Uniform Trade Secrets Act Pursuant to Montana Code Annotated § 30-14-401, *et seq.*

88.    Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 86 above as if fully set forth herein.

89.    The Greens, as Great Harvest's franchisees, were provided with specific information related to trade secrets and intellectual property belonging to Great Harvest as a result of their access to the Great Harvest System.

90.    Great Harvest's trade secrets and intellectual property include, but are not limited to, its recipes, business and advertising methods, market studies, marketing techniques, and pricing information.

91.    Great Harvest's trade secrets and intellectual property are only known to Great Harvest, its franchisees who have executed a franchise agreement, and its franchisees' employees who have executed Confidential & Non-compete Agreements.

92.    The Greens promised not to use Great Harvest's Great Harvest System, which includes Great Harvest's trade secrets and intellectual property, after the expiration or termination of the Franchise Agreement.

93.    Additionally, pursuant to Section C26 of the Franchise Agreement, the Greens agreed not to represent to anyone that they are still baking bread or using the

same or similar recipes or preparation techniques to those used while you were operating the Great Harvest franchise.

94.    However, the Greens posted an advertising and marketing video prior to the expiration of the Franchise Agreement representing that they planned to operate their new business in a same or similar fashion to their prior utilization of the Great Harvest System, and serve bread and other goods using the same or similar recipes or preparation techniques.

95.    The Greens' Bake My Day Café website links to Great Harvest branded catering and online ordering webpages, indicating that Bake My Day Café will be serving bread and other goods using the same recipes or preparation techniques, and designed to create confusion for customers and potential customers.

96.    The Greens failed to return Great Harvest's trade secrets and intellectual property as required by Section C26 of the Franchise Agreement by the deadline stated in the Franchise Agreement and as stated in the May 8, 2024 letter. Upon information and belief, the Greens have retained trade secret and other confidential information in violation of the Franchise Agreement.

97.    Upon information and belief, the Greens intend to sell products using the same recipes as they used and/or learned from Great Harvest.

98.    The Greens' conduct in keeping and utilizing Great Harvest's trade secrets and intellectual property that the Greens obtained by virtue of their access to

the Great Harvest System as franchisees constitutes willful and malicious misappropriation of Great Harvest's trade secrets and intellectual property.

99.    The Greens have benefited, and will continue to benefit, from their willful and malicious misappropriation of Great Harvest's trade secrets and intellectual property.

100.   As a result of the Greens' aforesaid conduct, Great Harvest has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Great Harvest through its trade secrets and intellectual property.

101.   As a result of the Greens' unlawful, willful, and malicious misappropriation of Great Harvest's trade secrets and intellectual property, Great Harvest is entitled to all damages afforded to it pursuant to Montana's Uniform Trade Secrets Act, including exemplary damages, and attorneys' fees.

102.   Great Harvest has suffered and will continue to suffer irreparable injury due to the Greens' above-described activities if the Greens are not preliminary and permanently enjoined as provided for pursuant to Montana's Uniform Trade Secrets Act.

## COUNT VI

## **Breach of Contract**

103.   Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 101 above as if fully set forth herein.

104.   On April 29, 2014, Great Harvest and the Greens entered into the Franchise Agreement.

105.   The Greens had a pre-expiration obligation pursuant to Section C8 to submit to an audit by Great Harvest during business hours within two days of the demand.

106.   Great Harvest made the demand on May 8, 2024 to perform an audit of the Greens' records, which was prior to the expiration of the Franchise Agreement.

107.   The Greens had a pre-expiration obligation to maintain strict confidentiality.

108.   The Greens had a pre-expiration non-compete obligation.

109.   The Greens' post-expiration obligations pursuant to the Franchise Agreement include without limitation:

    a.   Maintaining strict confidentiality related to the Great Harvest System.

    b.   Agreeing to pay Great Harvest all money owned to Great Harvest through the termination or expiration date.

c.  Returning of all of Great Harvest's confidential and proprietary information and documents, including confidential and proprietary information the Greens received as a result of having access to the Great Harvest System.

d.  Removal of all of Great Harvest's trademarks, logos, and other copyrighted material from the franchise location and franchise-maintained websites.

e.  Agreeing to be liable for the unredeemed cards and certificates belonging to the franchise.

f.  Agreeing to transfer ownership of all domain names that include Great Harvest's name and trademarks.

g.  Notifying Great Harvest of the Greens' post-expiration business plans.

h.  Providing Great Harvest with a detailed written de-identification plan for the Greens' franchise.

i.  Agreeing to stop representing the business as a Great Harvest franchise or suggesting that the Greens are operating a store still using Great Harvest's trade secrets.

    j.  Agreeing to having the Greens' business be subject to inspection by Great Harvest for two years following the expiration of the Franchise Agreement so that Green Harvest Bread can confirm the Greens' compliance with the Franchise Agreement's post-expiration obligations pursuant to the Franchise Agreement.

110.  The Greens breached the Franchise Agreement based on the aforementioned facts, and further in the following ways:

    a.  They refused Great Harvest's pre-expiration demand to audit the Greens' records;

    b.  They failed to maintain strict confidentiality related to the Great Harvest System;

    c.  They violated the both the pre- and post-expiration non-competition clauses;

    d.  They have not provided Great Harvest with a detailed, written de-identification plan;

    e.  They have not returned all of Great Harvest's confidential and proprietary information and documents, including the computer the Greens had previously received from Great Harvest;

f.  They have not stopped using online materials displaying Great Harvest's logo or name, or which are identifiable with Great Harvest's name or image;

g.  They have not stopped using any domain which contains or uses the Great Harvest trademarks;

h.  They have not submitted copies of the recipes they plan to use at the new business;

i.  They have not provided a complete employee list;

j.  They have not provided a full accounting of all items purchased from Sysco and Dawn Foods over the prior fourteen (14) days as a result of their ability to participate in Great Harvest's preferred pricing programs with those companies;

k.  They have not confirmed that they will not use any procedure or idea that the Greens may have discovered or developed while they were Great Harvest franchisees;

l.  They have not provided a list of all persons they employed over the last five (5) years, along with copies of those employees' signed Confidentiality & Non-compete Agreements;

m. They continue to represent that they are operating their new business in a same or similar fashion to their prior utilization of the Great Harvest System;

n. They refuse to submit to an audit of the franchise's records as required by Section C8 of the Franchise Agreement; and

o. They have not provided a signed verification confirming that their new business does not do any of the activities described as a competing business as stated in Section C17 of the Franchise Agreement.

111. The Greens' numerous breaches of the Franchise Agreement have caused damages to Great Harvest.

112. Great Harvest is entitled to recover all damages suffered as a result of the Greens' numerous breaches of the Franchise Agreement, in an amount to be proven at trial.

## COUNT VII

### Breach of the Implied Covenant of Good Faith & Fair Dealing

113. Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 111 above as if fully set forth herein.

114. The Franchise Agreement entered into between Great Harvest and the Greens contained an implied covenant of good faith and fair dealings.

115.    The Greens breached the implied covenant of good faith and fair dealings because:

    a.  They refused Great Harvest's pre-expiration demand to audit the Greens' records;

    b.  They failed to maintain strict confidentiality related to the Great Harvest System;

    c.  They violated the both the pre- and post-expiration non-competition clauses;

    d.  They have not provided Great Harvest with a detailed, written de-identification plan;

    e.  Upon information and belief, they have not returned all of Great Harvest's confidential and proprietary information and documents;

    f.  They have not stopped using online materials displaying Great Harvest's logo or name, or which are identifiable with Great Harvest's name or image;

    g.  They have not stopped using any domain which contains or uses the Great Harvest trademarks;

    h.  They have not submitted copies of the recipes they plan to use at the new business;

    i.  They have not submitted a complete employee list;

j.  They have not provided a full accounting of all items purchased from Sysco and Dawn Foods over the prior fourteen (14) days as a result of their ability to participate in Great Harvest's preferred pricing programs with those companies;

k.  They have not confirmed that they will not use any procedure or idea that the Greens may have discovered or developed while they were Great Harvest franchisees;

l.  They have not provided a list of all persons they employed over the last five (5) years, along with copies of those employees' signed Confidentiality & Non-compete Agreements;

m. They continue to represent that they are operating their new business in a same or similar fashion to their prior utilization of the Great Harvest System;

n.  They refuse to submit to an audit of the franchise's records as required by Section C8 of the Franchise Agreement; and

o.  They have not provided a signed verification confirming that their new business does not do any of the activities described as a competing business as stated in Section C17 of the Franchise Agreement.

116.   The Greens' numerous breaches of the implied covenant of good faith and fair dealings have caused damages to Great Harvest.

117.   Great Harvest is entitled to recover all damages suffered as a result of the Greens' numerous breaches of the implied covenant of good faith and fair dealings, in an amount to be proven at trial.

## COUNT VIII

## Unjust Enrichment

118.   Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 116 above as if fully set forth herein.

119.   This Count is plead in the alternative if the Court were to find that the terms of the Franchise Agreement are not enforceable against the Greens.

120.   In such an event, the Greens should not be entitled to retain the benefits of their wrongful conduct without compensating Great Harvest for the same and should be held liable under the equitable doctrine of unjust enrichment.

121.    In the event the Court finds the covenants contained in the Franchise Agreement are unenforceable against the Greens, the Greens still received benefits as a result of their retention of confidential and proprietary information, documents, and other materials the Greens' accessed as part of the Great Harvest System, and the improper use of Great Harvest's Registered Marks.

122.   Based on the Greens' receipt of benefits derived from their retention of confidential and proprietary information, documents, and other materials the Greens' accessed as part of the Great Harvest System, and the improper use of Great Harvest's Registered Marks, it would be inequitable for the Greens to retain such benefits without paying Great Harvest the value of such benefits.

123.   Great Harvest has suffered damages in the form of the unjust enrichment of the Greens for which Great Harvest is entitled to recovery for the payment of the value of such unjust enrichment, in an amount to be proven at trial.

## COUNT IX

## Declaratory Judgment Pursuant to the Montana Uniform Declaratory Judgments Act, Montana Code Annotated § 27-8-101, *et seq.*

124.   Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 122 above as if fully set forth herein.

125.   The Franchise Agreement provides Great Harvest with the right prior to the expiration of the Franchise Agreement to demand an audit of the Greens' records.

126.   On May 8, 2024, prior to the expiration of the Franchise Agreement, Great Harvest demanded that the Greens submit to an audit of their records.

127.   The Greens refused to submit to an audit of their records as demanded by Great Harvest.

128.   The Greens have no basis to deny Great Harvest's demand to perform an audit of the Greens' records.

129.   To settle and to afford relief from uncertainty with respect to Great Harvest's ability to demand that the Greens submit to an audit of their records following a demand made to do so prior to the expiration of the Franchise Agreement, Great Harvest requests that the Court enter a declaratory judgment in its favor as provided for in the Montana Uniform Declaratory Judgments Act.

## COUNT X

## Preliminary Injunction Pursuant to Montana Code Annotated § 27-19-201

130.   Great Harvest hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 128 above as if fully set forth herein.

131.   The Greens have repeatedly violated the Franchise Agreement.

132.   Great Harvest seeks preliminary injunctive relief to immediately enjoin the Greens from:

> a.  Promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks or which feature Great Harvest products and images;

b.  Promoting and otherwise advertising, selling, offering for sale, and
distributing products and services that utilize or are the result of
using Great Harvest's trade secrets, proprietary and confidential
information about its recipes, business and advertising methods,
market studies, marketing techniques, pricing information, and/or
any other materials or information the Greens received as a result of
having access to the Great Harvest System during the franchise
relationship and/or by virtue of being a Great Harvest franchisee;

c.  Marketing, promoting, opening and/or operating Bake My Day Café
or any other similar store at any physical location or virtually on the
Internet until such time as they have fully complied with the post-
termination obligations under the Franchise Agreement,
specifically:

   i.  The Greens must have returned and not retained copies of
recipes and all other confidential information belonging to
Great Harvest and this is verified and confirmed by Great
Harvest;

   ii. The Greens cannot sell any product whose recipe has not been
submitted to and approved by Great Harvests;

iii.    The Greens must submit all signs, marks and advertising materials for approval by Great Harvests;

iv.    The Greens must submit the lost all employees to Great Harvests; and

v.    The Greens must both submit a signed verification confirming that any new business does not do any of the activities described as a competing business as set forth in Section C17 of the Franchise Agreement.

d.  Engaging in any activities expressly prohibited by the Franchise Agreement.

133.   The Greens have already shown that they will continue to fail to meet their obligations pursuant to the Franchise Agreement, thereby causing immediate and irreparable harm to Great Harvest, if the Greens are not immediately enjoined from:

a.  Promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks or which feature Great Harvest products and images;

b.  Promoting and otherwise advertising, selling, offering for sale, and distributing products and services that utilize or are the result of using Great Harvest's trade secrets, proprietary and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, pricing information, and/or any other materials or information the Greens received as a result of having access to the Great Harvest System during the franchise relationship and/or by virtue of being a Great Harvest franchisee;

c.  Marketing, promoting, opening and/or operating Bake My Day Café or any other similar store at any physical location or virtually on the Internet until such time as they have fully complied with the post-termination obligations under the Franchise Agreement, specifically:

  i.  The Greens must have returned and not retained copies of recipes and all other confidential information belonging to Great Harvest and this is verified and confirmed by Great Harvest;

  ii.  The Greens cannot sell any product whose recipe has not been submitted to and approved by Great Harvest;

  iii.  The Greens must submit all signs, marks and advertising materials for approval by Great Harvest;

iv.   The Greens must submit the lost all employees to Great Harvests; and

v.    The Greens must both submit a signed verification confirming that any new business does not do any of the activities described as a competing business as set forth in Section C17 of the Franchise Agreement.

d.  Engaging in any activities expressly prohibited by the Franchise Agreement.

134.  The Greens will not be harmed by being required to meet their obligations pursuant to the Franchise Agreement, and being immediately estopped and preempted from:

a.  Promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks or which feature Great Harvest products and images;

b.  Promoting and otherwise advertising, selling, offering for sale, and distributing products and services that utilize or are the result of using Great Harvest's trade secrets, proprietary and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, pricing information, and/or

any other materials or information the Greens received as a result of having access to the Great Harvest System during the franchise relationship and/or by virtue of being a Great Harvest franchisee;

c.  Marketing, promoting, opening and/or operating Bake My Day Café or any other similar store at any physical location or virtually on the Internet until such time as they have fully complied with the post-termination obligations under the Franchise Agreement, specifically:

    i.  The Greens must have returned and not retained copies of recipes and all other confidential information belonging to Great Harvest and this is verified and confirmed by Great Harvest;

    ii.  The Greens cannot sell any product whose recipe has not been submitted to and approved by Great Harvest;

    iii.  The Greens must submit all signs, marks and advertising materials for approval by Great Harvest;

    iv.  The Greens must submit the lost all employees to Great Harvests; and

    v.  The Greens must both submit a signed verification confirming that any new business does not do any of the activities

Complaint - 47

described as a competing business as set forth in Section C17 of the Franchise Agreement.

    d.  Engaging in any activities expressly prohibited by the Franchise Agreement.

135.   Great Harvest is likely to prevail on the merits of its claims because the Greens failed to meet their obligations pursuant to the Franchise Agreement.

136.   The balancing of the equities favors Great Harvest because of the greater harm it will experience without the entry of a preliminary injunction, and because the Greens continue to fail to meet their post-expiration obligations pursuant to the Franchise Agreement, in addition to the fact that the Greens have shown their intent to continue to use Great Harvest's Registered Marks, copyrighted materials, trade secrets, intellectual property, and other information and materials belonging to Great Harvest as a result of the Greens' access to the Great Harvest System in violation of the Franchise Agreement.

137.   The public has a compelling interest in the Court entering a preliminary injunction to enforce the terms of the Franchise Agreement and to protect Great Harvest's Registered Marks, trade secrets, intellectual property, and confidential and proprietary information.

138.   Having demonstrated that Plaintiffs will be irreparably harmed, that Plaintiffs are likely to succeed on the merits, that the balance of equities are in Great

Harvest's favor, and that injunctive relief is in the public interest, Great Harvest is entitled to entry of a preliminary injunction pursuant to Montana Code Annotated § 27-19-201.

139. Specifically, Great Harvest seeks the entry of injunctive relief as follows:

      a. Preliminarily enjoining the Greens from promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks or which feature Great Harvest products and images;

      b. Preliminarily enjoining the Greens from promoting and otherwise advertising, selling, offering for sale, and distributing products and services that utilize or are the result of using Great Harvest's trade secrets, proprietary and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, pricing information, and/or any other materials or information the Greens received as a result of having access to the Great Harvest System during the franchise relationship and/or by virtue of being a Great Harvest franchisee;

c. Preliminarily enjoining the Greens from marketing, promoting, opening and/or operating Bake My Day Café or any other similar store at any physical location or virtually on the Internet until such time as they have fully complied with the post-termination obligations under the Franchise Agreement, specifically:

    i. The Greens must have returned and not retained copies of recipes and all other confidential information belonging to Great Harvest and this is verified and confirmed by Great Harvest;

    ii. The Greens cannot sell any product whose recipe has not been submitted to and approved by Great Harvest;

    iii. The Greens must submit all signs, marks and advertising materials for approval by Great Harvest;

    iv. The Greens must submit the lost all employees to Great Harvest; and

    v. The Greens must both submit a signed verification confirming that any new business does not do any of the activities described as a competing business as set forth in Section C17 of the Franchise Agreement.

d.  Preliminarily enjoining the Greens from engaging in any activities

expressly prohibited by the Franchise Agreement.

## COUNT XI

## **Permanent Injunction Pursuant to Montana Code Annotated § 27-19-102**

140.  Great Harvest hereby adopts and re-alleges the allegations set forth in

Paragraphs 1 through 138 above as if fully set forth herein.

141.  The Greens have repeatedly violated the Franchise Agreement.

142.  Great Harvest seeks permanent injunctive relief to enjoin the Greens

from:

a.  Violating any provision of the Preliminary Injunction;

b.  Promoting and otherwise advertising, selling, offering for sale, and

distributing products and services by using Great Harvest's

Registered Marks;

c.  Promoting and otherwise advertising, selling, offering for sale, and

distributing products and services that utilize or are the result of

using Great Harvest's trade secrets, proprietary and confidential

information about its recipes, business and advertising methods,

market studies, marketing techniques, pricing information, and/or

any other materials or information the Greens received as a result

of having access to the Great Harvest System during the franchise

relationship and/or by virtue of being a Great Harvest franchisee; and

    d. Engaging in any activities expressly prohibited by the Franchise Agreement.

143. The Greens have already shown that they will continue to fail to meet their obligations pursuant to the Franchise Agreement, thereby causing immediate and irreparable harm to Great Harvest, if the Greens are not immediately enjoined from:

    a. Violating any provision of the Preliminary Injunction;

    b. Promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks;

    c. Promoting and otherwise advertising, selling, offering for sale, and distributing products and services that utilize or are the result of using Great Harvest's trade secrets, proprietary and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, pricing information, and/or any other materials or information the Greens received as a result of having access to the Great Harvest System during the franchise

relationship and/or by virtue of being a Great Harvest franchisee; and

    d.  Engaging in any activities expressly prohibited by the Franchise Agreement.

144.   The Greens will not be harmed by being required to meet their obligations pursuant to the Franchise Agreement, and being estopped and preempted from:

    a.  Violating any provision of the Preliminary Injunction;

    b.  Promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks;

    c.  Promoting and otherwise advertising, selling, offering for sale, and distributing products and services that utilize or are the result of using Great Harvest's trade secrets, proprietary and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, pricing information, and/or any other materials or information the Greens received as a result of having access to the Great Harvest System during the franchise relationship and/or by virtue of being a Great Harvest franchisee; and

     d.  Engaging in any activities expressly prohibited by the Franchise Agreement.

145.  Great Harvest is likely to prevail on the merits of its claims because the Greens failed to meet their obligations pursuant to the Franchise Agreement.

146.  The balancing of the equities favors Great Harvest because of the greater harm it will experience without the entry of a permanent injunction, and because the Greens continue to fail to meet their post-expiration obligations pursuant to the Franchise Agreement, in addition to the fact that the Greens have shown their intent to continue to use Great Harvest's Registered Marks, copyrighted materials, trade secrets, intellectual property, and other information and materials belonging to Great Harvest as a result of the Greens' access to the Great Harvest System in violation of the Franchise Agreement.

147.  The public has a compelling interest in the Court entering a permanent injunction to enforce the terms of the Franchise Agreement and to protect Great Harvest's Registered Marks, trade secrets, intellectual property, and confidential and proprietary information.

148.  Having demonstrated that Plaintiffs will be irreparably harmed, that Plaintiffs are likely to succeed on the merits, that the balance of equities are in Great Harvest's favor, and that injunctive relief is in the public interest, Great Harvest is

entitled to entry of a permanent injunction pursuant to Montana Code Annotated §
27-19-102.

149.    Specifically, Great Harvests seeks the entry of injunctive relief as
follows:

    a.  Permanently enjoining the Greens from violating any provision of
the Preliminary Injunction;

    b.  Permanently enjoining the Greens from Promoting and otherwise
advertising, selling, offering for sale, and distributing products and
services by using Great Harvest's Registered Marks;

    c.  Permanently enjoining the Greens from Promoting and otherwise
advertising, selling, offering for sale, and distributing products and
services that utilize or are the result of using Great Harvest's trade
secrets, proprietary and confidential information about its recipes,
business and advertising methods, market studies, marketing
techniques, pricing information, and/or any other materials or
information the Greens received as a result of having access to the
Great Harvest System during the franchise relationship and/or by
virtue of being a Great Harvest franchisee; and

    d. Permanently enjoining the Greens from engaging in any activities expressly prohibited by the Franchise Agreement.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on the foregoing, Great Harvest demands judgment against the Greens as follows:

A.    Preliminary injunctive relief immediately enjoining the Greens from:

    a. Promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks or which feature Great Harvest products and images;

    b. Promoting and otherwise advertising, selling, offering for sale, and distributing products and services that utilize or are the result of using Great Harvest's trade secrets, proprietary and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, pricing information, and/or any other materials or information the Greens received as a result of having access to the Great Harvest System during the franchise relationship and/or by virtue of being a Great Harvest franchisee;

c. Marketing, promoting, opening and/or operating Bake My Day Café or any other similar store at any physical location or virtually on the Internet until such time as they have fully complied with the post-termination obligations under the Franchise Agreement, specifically:

i. The Greens must have returned and not retained copies of recipes and all other confidential information belonging to Great Harvest and this is verified and confirmed by Great Harvest;

ii. The Greens cannot sell any product whose recipe has not been submitted to and approved by Great Harvest;

iii. The Greens must submit all signs, marks and advertising materials for approval by Great Harvest;

iv. The Greens must submit the lost all employees to Great Harvest; and

v. The Greens must both submit a signed verification confirming that any new business does not do any of the activities described as a competing business as set forth in Section C17 of the Franchise Agreement.

    d. Engaging in any activities expressly prohibited by the Franchise Agreement.

B.    Permanent injunctive relief enjoining the Greens from:

    a. Violating any provision of the Preliminary Injunction;

    b. Promoting and otherwise advertising, selling, offering for sale, and distributing products and services by using Great Harvest's Registered Marks;

    c. Promoting and otherwise advertising, selling, offering for sale, and distributing products and services that utilize or are the result of using Great Harvest's trade secrets, proprietary and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, pricing information, and/or any other materials or information the Greens received as a result of having access to the Great Harvest System during the franchise relationship and/or by virtue of being a Great Harvest franchisee; and

    d. Engaging in any activities expressly prohibited by the Franchise Agreement.

C.     Declaratory judgment in Great Harvest's favor to settle and to afford relief from uncertainty with respect to Great Harvest's ability to demand that the Greens submit to an audit of their records following a demand made to do so prior to the expiration of the Franchise Agreement;

D.     Awarding Great Harvest's its actual and consequential damages in an amount to be established at trial as a result of the facts alleged herein and such other facts established at trial;

E.     Awarding Great Harvest's liquidated damages pursuant to Sections C16 and C17 of the Franchise Agreement in an amount to be established at trial as a result of the facts alleged herein and such other facts established at trial;

F.     Awarding Great Harvest pre- and post-judgment interest on its damages at the rates prescribed by applicable law;

G.     Awarding Great Harvest its costs and expenses in this litigation, including its attorneys' fees, expert fees, and other costs and disbursements; and

H.     Awarding Great Harvest such other and further relief as this Court may deem just and proper under the circumstances.

**JURY TRIAL DEMANDED**

DATED this 13th day of May, 2024.

GREAT HARVEST FRANCHISING, INC.
By Counsel

/s/ *Jeana R. Lervick*
Jeana R. Lervick (MT Bar No. 13197)
CROWLEY FLECK, PLLC
490 North 31st Street, Suite 500
Billings, MT 59101
Phone: (406) 255-7271
jlervick@crowleyfleck.com
*Counsel for Great Harvest Franchising, Inc.*